Levine et al. vs. Michel.

## No. 8721.

### WILLIAM T. LEVINE ET AL. VS. BERNARD MICHEL.

In an injunction suit to prevent the continuance of the acts complained of, plaintiffs alleging that those acts, if persisted in by defendant, will cause them more than $2,000 damages this Court has jurisdiction of the case.

Under the Statutes of the State relative to the appointment of Branch Pilots of the Port of New Orleans, and regulating their duties, a partnership or association of the said pilots, though State officers, for the purpose of furthering and protecting their common interests, is not illegal. Under the language of these Statutes such association is authorized, and excepts the pilots from any legal principle which would forbid such an association of State officers for the purposes declared.

Articles 1926, 1927, 1929 of the Code, authorizing specific performance of obligations to do or not to do in certain cases, apply to contracts of partnership as well as to other conventional obligations.

Where, by a valid contract of partnership, a partner bound himself: 1st, to devote his time, labor, skill, etc., to the partnership business; 2d, not to carry on the partnership business otherwise than as a partner, the latter negative obligation may be enforced by injunction, although the former cannot be specifically enforced.

APPEAL from the Twenty-fourth District Court, Parish of Plaquemines. *Livaudais*, J.

---

*J. R. Beckwith* for Plaintiffs and Appellees:

1. Under the ruling in 32 An. 1135, 1187; 34 An. 834, and in No. 8749 of the present docket, this Court is without jurisdiction to hear this case on appeal.

2. The agreement of association between the Branch Pilots of the Port of New Orleans, set out in the record, is lawful, and is not governed by the law relating to partnership (R. S. 2707-2709) being specially authorized and recognized by statute.

3. If the articles of association in the record are held to be partnership, the Court will enforce specific performance of the contract, both of the affirmative covenant to contribute to the partnership the authority, skill and labor of the defendant, and the negative covenant on his part not to enter into a like business on his account, or with others, to the injury of his associates. Marble Co. vs. Ripley, 10 Wall. 339; Chitty on Contracts, 11th ed. 341; 2 Term Reps. 482; 7 Mod. 116; 13 East. 538; 6 Simmons, 333; 9 Condensed Eng. Chancery Reps. 236; Parsons on Partnership, 298; 16 Ves. 382; 4 E. D. Smith, 135; 13 Eng. Law and Equity Reps. 252; 2 Edward's Chancery Reps. 529; Wintz vs. Vogt, 3 An. 16.

### *E. H. McCaleb* and *F. C. Zacharie* for Defendant and Appellant:

Under the *regime* of the civil law no one can be enjoined to carry on a partnership requiring the exercise of skill and industry. The only action to which the recalcitrant partner subjects himself for failing to comply with the partnership contract, is a suit for the damages to the partnership occasioned by his acts. Institutes of Justinian, Lib. III, Tit. XXVI, § IX; Bail c. Moulong et Brisson, Cour de Lyon, 18 Mai, 1823; R. C. C. 2862; 13 An. 519. L'inéxécution volontaire de ses engagements par un associé le rend passible de dommages-intérêts. Troplong, Contrat de Société, 988.

A partner who has agreed to furnish his skill and labor should be deemed to have contracted a hiring of his services. Pardessus, Cours de Droit Commercial, Tome IV, No. 989.

In an obligation to do or not to do, the creditor cannot coerce his debtor to a performance of his contract without violating his liberty. *Nemo potest praecise cogi ad factum.* Pothier,

141

Levine et al. vs. Michel.

Traité des Obligations, partie 1, chapitre II, § 11, No. 157; Duranton, Liv. III, Tit. III, No. 453.; Laurent, Tome XVI, No. 459.

A dispute arising in a pilotage partnership cannot be settled by injunction. 26 An. 311. Nor can the Court, by injunction, direct or control a public officer in the performance of his duties. 34 An. 746 ; 24 An. 16.

A chancery injunction bill is unknown to and unauthorized by the Louisiana Code of Practice. In this State a writ of injunction is merely ancillary to a suit—a conservatory act accompanying a principal demand. It is synonymous with the common law writ of prohibition. 99 U. S. 380.

Compelling the defendant, by injunction, to specifically perform the obligations stipulated in the articles of co-partnership, violates the very letter of the law authorizing the Branch Pilots to "form themselves into one or more voluntary private associations." R. S. 1870, Sec. 2707. Such association ceases to be voluntary and becomes compulsory when kept together by a mandatory injunction.

The following clause in a contract of partnership, "said parties being bound to the provisions of this article in the penal sum of $5,000 each, and forfeiture of all right, title and interest in this partnership," is a conditional novation, an agreement that if the first obligation was not fulfilled, it should be extinguished and supplanted by the second. The creditor cannot, in such case, enforce the primary obligation. Digest Book XLIV, Tit. VII, Law 44, § 6; Pothier, Traité des Obligations, Partie II, Chap. V. No. 342; Marcadé, Tome 4, No. 651; Duranton, Tome 10, No. 485; Idem, Tome 11, No. 338.

A creditor cannot exact the enforcement of a primary obligation and at the same time reserve his right to claim the penalty. A judgment permitting such reservation should not be affirmed. R. C. C., Arts. 2124, 2125; 18 An. 276.

---

The opinion of the Court was delivered by

Todd, J. This is a suit substantially by the Pilots' Association, composed of the Branch Pilots of the Port of New Orleans, against the defendant, a member of the same association, to compel him to a specific performance of his engagements under the articles of agreement entered into by said members when the organization of the association took place ; and to enjoin him from the commission of certain acts designated specifically and at large in the petition, and charged to be in violation of his said engagement and obligations to the company.

We are met at the threshold of our inquiry into the case, by a suggestion of the plaintiffs' and appellees' counsel that this Court is without jurisdiction of the appeal—*ratione materiæ*—and under this suggestion we have made a careful examination of the pleadings and the record, with a view to determine the question.

The main object of the suit, as stated, seems to be to preserve intact, and to protect from infringement on the part of any member, the articles of agreement which form the basis of the association.

There is no moneyed demand made against the defendant, except for the payment of the costs of suit. There is, however, an allegation in substance that, if the defendant is permitted to continue in the commission of the acts complained of, it would cause damage to the amount of $2,000. With respect to the acts already done, of which

complaint is made, the right is reserved in the petition to claim damages therefor in another suit, and this reservation is made in the judgment.

An injunction issued, as stated, to restrain the defendant from committing the acts specified as violative of his obligations to the association.    This injunction was set aside on bond, and the plaintiffs appealed from this order.  We note that, in the petition for the appeal, it is asserted that the damage the defendant will inflict, while the writ of injunction is suspended, exceeds two thousand dollars per month. The object of the suit is to prevent or avoid such damage.   It is plain that the Court has jurisdiction.

## ON THE MERITS.

The defendant excepted to the plaintiffs' action, on grounds substantially as follows :

That plaintiffs are absolutely without right to maintain this suit and stand in judgment.

That plaintiffs and defendant being public officers—branch pilots of the Port of New Orleans—were incapable of entering into any contract of co-partnership relating to their offices and to the performance of their duties. That plaintiffs are without authority and the Court without jurisdiction to interfere with, regulate, hinder or prevent the performance of defendant's official duties as a branch pilot of the Port of New Orleans.

Coupled with this exception was the answer which, in effect, was a general denial, and an admission that defendant signed the contract set out in the petition, but denied that the same was binding upon him.

From a judgment in favor of plaintiffs, decreeing a specific performance of the contract and perpetuating the injunction, the defendant has appealed.

The provisions of the contract which the defendant is charged with violating, are mainly these :   That it was stipulated that all the earnings of any member of the association, growing out of the pilotage of vessels, should be paid into the common fund of the association, to be distributed, as to the profits accruing, *pro rata* among the members.

That each member should bring to the business of the association his time, skill, labor, etc., and should not carry on, on his own account or in conjunction with others, any business in the nature of piloting, or of a like character, with that of the association.

It is charged that the defendant has violated these articles of the association by refusing to perform duty on the vessels of the association ; that he procured a small open boat, and prosecuted the business

of piloting on his own account, in disregard of his engagements as a member of said association, and in contravention of the laws of the State.

There is no dispute touching the acts of the defendant in this connection. They are virtually admitted and justified, on the ground embraced in the exception, that the articles of the association were not binding on him, but opposed to law and public policy and, therefore, void, and this is the question to be determined.

The Branch Pilots of the Port of New Orleans have been held by this Court to be State officers. 14 An. 7 ; 33 An. 230.

We have been presented by the defendant's counsel with an array of authorities in support of his proposition, that such officers cannot enter into a partnership for the purpose of pooling their earnings and regulating their duties.

Even admitting this principle is applicable to a class of persons who, though termed State officers, discharge functions that have no apparent connection with any of the several departments of the State government, yet it is contended that the statutes providing for the appointment of Branch Pilots, and defining and regulating their duties, authorize and provide for such an association or partnership as we find in this case.

The provision referred to is found in Sec. 2707, R. S., which is in these words :

" The duly licensed branch pilots of the port of New Orleans may, for the furtherance of their interests, form themselves into one or more voluntary private associations."

The second article of the said association or partnership accordingly declares that :

" The objects and purposes of the said partnership shall be to mutually protect the common interest of the said partners thereto in the pursuance of their profession as branch pilots of the port of New Orleans."

The reading of the sections of the law relating to the appointment and duties of these pilots, and the contract referred to, points out very clearly the interests sought to be protected by this agreement. For instance, the law makes it imperative upon each pilot to be the owner or part owner of at least one decked pilot boat of not less than fifty tons burden ; and a pilot not owner of such a vessel is to be suspended from his office. R. S. 2703.

It might well happen that a pilot, though otherwise competent and qualified, might not be so fortunate as to own in whole or in part the vessel required. Ample provision is made for such contingency in the

articles in question. A number of vessels, valued at $63,000, were contributed by certain members of the association, and became the joint property of all, thus enabling each one of them to meet the statutory requirement referred to.

As it was evident that the business of the licensed pilots, relating to the duties imposed upon them would be large and, at times, complicated, difficult to be attended to individually, a general agent and manager was appointed, under an article of the partnership, with an office in New Orleans, to whom such matters were assigned.

We need not further particularize, but it is evident that the interests of the pilots were sought to be provided for in these articles of association. We have examined each of them minutely, and do not find that any of them are in conflict with the provisions of the law regulating the duties or business of the pilots, but, on the contrary, are designed and calculated to enforce the legal regulations, and add to the efficiency of the service required thereby.

It is, however, contended by the defendant's counsel, that the section of the statutes referred to, authorizing the formation of associations for the furtherance of the interests of the pilots, meant only associations for benevolent purposes. We do not so construe the language of the statute. No legal authorization would be needed for any purpose of that kind, and an attentive examination of the law on the subject leads to the conclusion that the language referred to had a broader significance, and referred to material interests, and not merely to those pertaining to benevolence or humanity.

For instance, Sec. 2709 provides that " any branch pilot piloting any vessel from sea and giving satisfaction shall have a preference in piloting her out to sea again, *provided* he or a pilot from the *same association* shall be in readiness and offer his services, etc." Why should the law concern itself with thus guarding a material interest of the contemplated association or associations, if its true interest was that the formation of such organizations had no connection whatever with such interests, and was in no manner designed to further or protect them ? Nor do we find any more force in the suggestion, that its meaning might have been to authorize the creation of corporations to carry out the objects desired, and not partnerships. We do not perceive how, forming themselves into a corporation for the same or like purposes, the association of the pilots would have been any less amenable to the objections urged against the partnership. If the partnership was illegal, we cannot see why a corporation, under the same conditions, would have been any less so.

The law expressly licensed the pilots to form associations for the

furtherance of their interests; that much granted. It was not a matter of much moment how this association should take place, or by what name it should be called. Whilst every association of persons does not imply a partnership, it is certain that every partnership implies an association. In this instance, as in so many others, we find nothing in the name.

There being nothing in these articles that contravened the law or its policy, the contract between the parties became a law unto themselves, binding in every respect, and which they could not violate with impunity. And recognizing this contract as a legitimate contract and as specially authorized by law, it is the duty and province of the courts to protect the rights of parties thereunder from infringement, and enforce its performance under a proper showing. We know of no principle of law that would deny the power of the courts to do so, and we do not recognize the authorities cited by the defendant's counsel as having that effect, or as applicable to the circumstances of this case.

We think the plaintiffs have fully shown that they are entitled to the relief asked, and that the judgment of the lower court, in granting that relief, was correct; and that judgment is affirmed with costs.

## ON REHEARING.

FENNER, J. The correctness of our former opinion on the question of the legality of the contract of partnership herein involved is not called in question; but, its legality being conceded, the point urged upon our notice is that, under our system, such a contract cannot be specifically enforced.

It is not denied that, under the Roman, as well as under the common law, obligations to do or not to do, arising from contracts, were enforced, not specifically, but only by way of damages. The maxim was, *" nemo potest præcise cogi ad factum."*

The like rule was expressly embodied in the Napoleon Code, of which Art. 1142 provides : *" Toute obligation de faire ou de ne pas faire se résout en dommages et intérêts, en cas d'inexécution de la part du débiteur."*

Our own Code, however, contains the following provisions :

" Art. 1926. On the breach of any obligations to do or not to do, the obligee is entitled either to damages, or, in cases which permit it, to a specific performance of the contract, at his option, etc."

" Art. 1927. In ordinary cases, the breach of such a contract entitles the party aggrieved only to damages, but where this would be an inadequate compensation, and the party has the power of performing the

contract, he may be constrained to specific performance by means prescribed in the laws which regulate the practice of the courts."

"Art. 1929.  If the obligation be not to do, the obligee may also demand that the obligor be restrained from doing anything in contravention of it, in cases where he proves "an attempt to do the thing covenanted against."

That these articles apply to contracts of partnership, as well as to other contracts, sufficiently appears from the generality of their terms, as well as from the provision of Art. 2803.  The pretension that Art. 2862 is inconsistent with this position, is without foundation.

The mere reading of the Articles quoted refutes the major portion of the argument for rehearing, and establishes, beyond controversy, that, in proper cases, the Courts of this State may and should enforce specific performance of contracts by both mandatory and injunctive relief.

The reader of the Articles must be struck with the perfect similarity of the ground stated for this relief, viz: where damages "would be an inadequate compensation," to the main foundation of equity jurisdiction of specific performance under the English law, viz: where the legal remedy (which is in damages) would be inadequate.  2 Story on Eq., §§ 717, 718;  1 Fonbl. Eq., Bk. 1, ch. 1;  Fry on Spec. Perf., § 11, etc.

In determining, therefore, what are proper cases for specific relief, the equity jurisprudence of England and this country may be instructively consulted.  How far our Courts should follow that jurisprudence is a question to be determined in cases as they arise.  We have no occasion now to say more than that, in administering such relief, in cases of obligations *to do*, we should be guided by that respect for individual liberty which is an ennobling characteristic of our remedial system, so far as obligations *not to do* are concerned, the remedy by injunction is explicitly pointed out by Art. 1929, in cases properly covered thereby.

To come now to the instant case.

The contract, of which performance is sought, contains obligations both *to do and not to do*.  Thus, it provides that "each partner shall bring to the business of said firm, all his time, skill, influence, attention and labor."  Here we have an obligation *to do*, of a character specific performance of which is obviously non-enforcible, because involving the exercise of skill, good-will and like qualities inherent in the volition of the obligor, the exercise of which courts have no power of compelling.  Fry on Spec. Perf. §§ 39, 40, 48, 50, 56, 58, 59, and authorities there cited.

So far as our former decree involved specific performance of this obligation, it was error and must be corrected.

The contract also included the following distinct obligation *not to do*. "No partner shall have the right to enter into and carry on any business of a like nature with the business of this partnership, whether for his own account or in conjunction with others."

Why should not the obligor be "restrained from doing anything in contravention of this obligation," under the terms of C. C. Art. 1929? We see no reason. Lawful contracts have the effect of laws as upon the parties to them. Therefore, it is the legal duty of the obligor to comply, the legal right of the obligee to exact compliance; and a violation thereof is "injurious to plaintiff and impairs a right which he claims," and is, therefore, a proper subject for injunction within the very terms of Art. 296, Code of Practice.

It is true that it was the ancient doctrine of English equity and is, perhaps, still that recognized in this country, that "when the positive part of an agreement could not be performed by the court, it would not enforce the negative part by injunction." But to this rule there was always an exception, universally recognized, in the case of the contract of partnership, as to which it is well established, from an ancient date, that "where a partner agreed to exert himself for the benefit of the concern, and not to carry on the partnership trade except as a partner, the court would, if the partnership was subsisting, enjoin against a breach of the last stipulation, though it certainly could not enforce the former." Morrison vs. Coleman, 18 Ves. 437 ; Kemble vs. Kean, 6 Sim. 333 ; Whitaker vs. Howe, 3 Beav. 383 ; Willard's Eng. Jur. p. 277 ; Fry on Spec. Perf. §§ 230, note, 556, 557, note.

This is precisely the instant case, and we see no reason why a like principle should not be applied under our law.

We find no merit in any of the other objections to our former decree.

We do not consider that the penal clause attached to Art. 7 of the contract affects the right to the remedy by injunction. Fry on Spec. Perf. § 66 *et seq.*

It is matter of course that the injunction will remain operative only during the existence of the partnership, and in case plaintiffs should claim its dissolution, that would end the injunction. As we must amend, we will guard this point, though, perhaps, unnecessary.

The reserve of right to claim damages applies, of course, only to damages inflicted by past illegal acts, and is not objectionable.

There is nothing in the objection that a public officer is enjoined from performing the duties of his office. The way to their performance, in the only proper and lawful mode, is left open to him.

The judgment must be restricted to the relief by injunction, and our former decree must be amended in that respect.

It is, therefore, ordered that our former decree herein be annulled and set aside; and it is now ordered, adjudged and decreed, that the judgment appealed from be now amended by striking therefrom the words: "And that the said Bernard Michell be decreed to fulfil and carry out all of his said obligations under the said agreement;" that it be further amended by inserting therein, after the words, "that the writ of injunction herein issued be made perpetual," the words, "to be operative, however, only during the continued existence of the partnership;" and that, as thus amended, the same be affirmed, plaintiffs and appellees to pay costs of this appeal.