Statement of the Case.
MONROE, J.
This is an action upon an agreement of compromise, and arises out of the following circumstances:
S. J. Webb, plaintiff’s brother, invented a cotton press (or some valuable improvement in the method of compressing cotton), and he and another brother, R. D. Webb, who is one of the defendants herein, patented and exploited it, under the firm name of S. J. Webb & Bro., until 1S96, when, with J. Y. Webb, Jr., Thos. Crichton, and J. E. Crichton, they organized the Webb Press Company, Limited,' with a nominal capital of $100,000, divided into shares of $100 each, of which S. J. Webb took 62 shares, R. I). Webb 20 shares, Thos. Crichton 10 shares, J. E. Crichton 6 shares, and J. Y. Webb-, Jr., 1 share. Some time afterwards $40,000 more were subscribed by the same parties, and later still the Crichtons withdrew, and S. J. and R. D. Webb appear to have become the owners of all the stock, in the proportions of 75 per cent, to S. J. Webb and 25 per cent, to R. D. Webb, although there were a few shares standing in the names of other parties. S. J. Webb died in April, 1909, and his estate devolved upon his brother, R. D. Webb, and his four sisters. R. D. Webb acquired the interest of three of the sisters, but the fourth (plaintiff herein) brought two suits against him (Nos. 2,286 and 2,294 of the docket of the district court), in which she complained of his administration of the estate, and particularly of the business of Webb Press Company, Limited, and thereupon, or thereafter (on June Í7, 1911), a notarial agreement of compromise was entered into between plaintiff, on one side, and the two defendants (Webb Press Company, Limited, and R. D. Webb), on the other, to the following effect, to wit:
“The said Mrs. C. W. Longino, in consideration of the concession to her of a three-twentieths interest in the Webb Press Company, Limited, and in further consideration of this compromise settlement, and to avoid litigation in suits Nos. 2,286 and 2,294, * * * now pending, has and does by these presents transfer and deliver to Dr. Robt. D. Webb all her rights and interest, reserved by her and conceded to her,, in all the assets and property of the company, except a fixed and agreed three-twentieths interest, reserved by her and conceded to her, in all the assets and property of the company and legally due the company at the date of February 1, 1911, including three-twentieths interest in all royalty claims 'allowed or paid to Dr. Robt. D. Webb and all the assets and property on hand of every kind or due the company at that date, and accrued interest on said assets, transferring, by this act, all business of the company since that date to said Dr. Robt. D. Webb, including presses manufactured for the company, prior to February 1, 1911, and used in filling contracts of date since February 1, 1911, on payment by Dr. R. D. Webb of all costs of manufacture, shipping, and erecting the same — she by this act and transfer retiring from the business of the company on the date fixed,. February 1, 1911, being, from and after that date, relieved from all expense in managing, operating, and running the business; it being understood _ that she was [is] to be paid her three-twentieths of the assets existing prior to February 1, 1911, and [less] such subsequent charges as may be necessary to enforce, by law, the collection of assets of the company in which her three-twentieths interest has been herein reserved. This makes her three-twentieths interest a net interest, subject to payment only of such debts as are above stated; her three-twentieths interest bearing its proportionate share of said debts, with exceptions mentioned. * * * Dr. R. D. Webb and the Webb Press Company, Limited, agree to and concur in this transfer and reservations stated, and that the said Webb Press Company, Limited, shall furnish a list of the assets of the company, as of date February T, 1911, to be verified by Dr. L. Longino, assisted by F. W. Todd, or acceptable expert, and further to pay over to Mrs. O. W. Longino, or to her order, or to her accredited agents, the three-twentieths of the assets due her, as collected, and to give satisfactory security for the performance of the obligations herein incurred, and especially consent that Mrs. Longino shall have the option and right to take in settlement any assets of the company, where same are to be discounted in settlement, at the price .fixed on same for such discount settlement with the debtors of the company. '
*30 “Be it further known that the parties, * * * in consideration of a concession to Mrs. Longino of a three-twentieths interest in * * * S. J. Webb & Bro., and to compromise and avoid litigation, * * * agree that the assets of the firm shall be fixed at $30,000 for the purpose of this settlement, and that Dr. R. D. Webb shall have full title and interest in and to said assets * * * on payment to Mrs. O. W. Longino of three-twentieths of said amount, with the special agreement that this settles all claims, of whatever nature, between the firm of S. J. Webb & Bro. and the Webb Press Company, Limited, in so far as it may affect Mrs. C. W. Longino’s three-twentieths interest in the assets of the Webb Press Company, Limited.
“Be it further known that Mrs. C. W. Longino * * * does by this act sell and transfer to him all her rights, title, and interest in all the assets of the estate and succession of S. J. Webb, deceased, hereby agreed and fixed at $20,000 for the purpose of this settlement, which sum is to be held and considered forming all the property of said succession not included in the assets of S. J. Webb & Bro. and the Webb Press Company, Limited, and with the understanding and agreement that no claim shall be made against either that partnership or that company or Mrs. C. W. Longino .by said succession. The price and consideration of this transfer is the compromise stated, and to avoid litigation, and the further consideration of the payment to Mrs. Longino of one-fifth interest of the assets stated in said amount fixed. This transfer includes all of Mrs. Longino’s rights and interest in and to patents and inventions of the deceased, S. J. Webb, and she agrees to make formal deed of said interest to any or all the patents or inventions as may be requested, and also deeds, when requested, of all lands and real estate she has transferred to Dr. R. D. Webb by this act.
“Be it further known that Mrs. Longino, as a special agreement, is to be paid three-twentieths of the agreed value of all tools, tackle, and like perishable property in use of the company and to relinquish hereby all her rights and claims therein.”
It was further agreed that Mrs. Longino and Dr. Longino should repay certain loans •and advances made to them by S. J. Webb, R. D. Webb, S. J. Webb & Bro., and Webb Press Company, Limited, amounting to $5,-685 and $4,091, respectively.
“All other accounts and advances and claims between said parties to be held and [considered] canceled and settled, in full of all demands, except for advances made by Dr. Robt. D. Webb to L. Longino for purchase of land, etc., in what is known as the Longino, Webb & Mims partnership firm, in South Louisiana, and excepting, further, the amount due by Dr. Longino to the Webb Press Company, Limited, on what is known as the ‘Longino Building Account.’ ”
The $4,000, representing plaintiff’s interest in the estate of S. J. Webb (other than that involved in the partnership and the company), and the $4,500, representing her interest in the partnership, were paid to her before the institution of this suit. There were also paid to her $27,600, as her three-twentieths (or 15 per cent.) of $184,000, which had been paid by the company to R. D. Webb as royalties, and there were tendered to plaintiff and refused by her, because of a difference of opinion as to the interpretation of the compromise, a further sum of $15,000 as an advance on account of her three-twentieths interest in the assets of the company. The substance of her present complaint, and of her demands for relief, may be stated as follows:
She alleges that she has complied with the agreement of the compromise, and that defendants, in spite of repeated demands, have failed so to do: (1) In that they have refused to execute a - bond by way of giving the “satisfactory security” called for by the contract, and, instead, have offered to place in the Bank of Minden, in the hands of R. H. Miller, as trustee, certain assets of the company, to be held by Miller to secure the discharge of their obligations, which offer was declined, as unauthorized and unsatisfactory ; (2) in that they have' failed to furnish a correct list of the assets of the company, as of date February 1, 1911, or a statement informing plaintiff of the liabilities of the company, or the charges for which she may be, in part, responsible, and refuse to accept, as correct, the list or statement prepared by her; (3) in that she was to receive her three-twentieths interest—
“in all cash on hand, and in all cash collections as made, and in certain property such as might be perishable or in use by the company and in which she has an interest, amounting to $37,578.46 in cash on hand, and $16,782 *32 in machinery account, and $806.01, of office fixtures and furniture, and * * * $4,500 in alleged dividends, under alternative conditions stated, making, in all, due her, $13,804.00, with legal interest * * * from February 1, 1911, on items stated here, and the further and other amounts of three-twentieths of $254,-000, with 5 per cent, legal interest, from time said amount as royalty account was allowed Dr. Webb, of date March 8, 1910, less credit of $27,600, of date August 17, 1911, and the further sum of three-twentieths, of $55,000 collected since February 1, 1911, * * * up to date, September, 1911, * * * and three-twentieths of interest in claims since that date collected, in sum of $13,000, which is all due her, with legal interest from the date of judicial demand. * * *
“Wherefore petitioner prays for citation on the Webb Press Company, Limited, R. D. Webb, president, and Dr. Robt. D. Webb, and * * * for judgment against them, and each of them, in solido, for the specific performance of the agreement of compromise, * * ;lr and for judgment ordering them and each of them to give the security required by the agreement, in the sum of $100,000, * * * and * * * for judgment * * * requiring specific performance in furnishing a correct list of assets and debts under the agreement, and for the enforcement of said judgment by all orders and writs necessary, » * * and further prays that the list made up by experts and annexed as a correct list of assets and debts, made part of this petition, he accepted as a correct list, and defendants forced, in specific performance of their compromise .contract,, to accept same and make it a part of the compromise agreement, and that your petitioner have judgment therefor. * * * Tour petitioner further prays, in the alternative and in the event that the defendants are held to have complied with their agreement by furnishing the list, with alleged errors and misstatements in it, * * * then and in that event all the alleged errors should be corrected and amounts and items so corrected. * * * ”
There is a further prayer with regard to the interest to he allowed, and the petition concludes as follows:
“And your petitioner further prays for judgment for specific performance of all and singular agreements to pay your petitioner money, as shown by the agreement and as alleged in this petition, in the amounts alleged and stated due her, or that may be found on the trial hereof to be due her, and that she have a money' judgment therefor, to enforce specific performance, and for judgment for the amounts, with interest alleged, from dates alleged, and for all orders necessary to enforce and collect same, and for costs and general relief.”
Defendants excepted: That plaintiff was unauthorized by her husband; that the contract is indivisible, and that suit for the specific enforcement of particular stipulations will not lie; that the petition discloses no cause of action. They were relieved from answering until the authorization of the husband was filed, and the other exceptions were overruled.
Plaintiff then filed an amended petition, in which she was joined by her husband, and in which they aver that:
“They submit the contract of compromise for fulfillment in each and all particulars, and allege a compliance therewith and a willingness and readiness to submit to judgment enforcing same in all the obligations imposed under and according to its terms and provisions and their legal interpretation and allegations * * * heretofore made. * * *
“That they are informed and believe that Dr. R. D. Webb has acquired the interest of all of the heirs of S. J. Webb in his succession and estate and the rights acquired by S. J. Webb’s heirs in S. J. Webb & Bros.’ partnership. save and except such interest as your petitioner, Mrs. C. W. Longino, has not legally received in partition, and that, therefore, in this suit, all parties in interest, directly or contingently, are before the court for the enforcement of the compromise agreement, which your petitioners demand judicially — admitting receipt of amounts stated in the contract as her share of the amounts divided and partitioned in the S. J. Webb estate and S. J. Webb & Bro. partnership, reserving and praying only for her right to share further in other assets and property of said estates, not in any way to affect the compromise agreement herein to be enfoi'ced as originally alleged and fully set forth, and in no way to affect the validity and binding force of the compromise agreement.”
Defendants thereupon filed other exceptions, of “no cause of action,” and illegal cumulation of demands for specific performance and moneyed judgment, the first of which was overruled, and the other referred to the merits. They then answered, separately, in effect as follows:
The Webb Press Company, after a general denial, avers: That it agreed to furnish a list of its assets and liabilities to the said—
“Robt. D. Webb and Mrs. C. W. Longino and her husband, * * * to be used by them in selecting the items therefrom to be considered, under the compromise agreement, in arriving at the sum to be paid Mrs. Longino by Robert *34 D. Webb,, and that your respondent agreed to reduce said items, to be thus selected, into money, in due course, and to submit to an examination of its books by experts for the purpose of ascertaining the correctness of the list presented and of the items reduced to money; * * * that in compliance with its said obligations it submitted to the said parties a list of its assets and liabilities, of date February 1, 1911, such list being always submitted subject to corrections, and that the list then presented was substantially correct, with the exception that it failed to show a liability to S. J. Webb of $1,000, which was overlooked, as appears by list annexed hereto and made part hereof; * * * that it has complied with its obligation under the said agreement of compromise and transaction, and that it stands ready to comply with any obligations that it may be held were imposed upon it by said agreement.
“Xour respondent especially denies that the said Mrs. C. W. Longino or Robt. D. Webb have at any time owned any interest in the tangible or intangible, movable or immovable, personal or real, property of this company, or that any right of ownership has been acquired by either of them, or that this company has bound itself towards either of said parties in such manner as to recognize or transfer any interest to them of ownership in the property of this company. In the alternative, and under the reservations hereinabove first made, and in the event it should be held that the said Mrs. G. W. Longino has any right of ownership in the property of this company, your respondent shows that the list as above is true and correct, and there should be struck from said list the following items, to wit:
“From the list of assets there should be struck from the machinery account $8,800 for parts of press at Birmingham, Alabama, as, under the agreement of compromise, said item was expressly withdrawn, and also from the list of liabilities, ‘Mrs. C. W. Longino $4,500,’ all of said item being excluded by the agreement, and this company be relieved of all liability to Mrs. O. W. Longino for the item of $70,000, royalties shown due to Dr. Robert D. Webb.
“Wherefore respondent prays that it be decreed that it has complied with all its obligations under said agreement and that it be relieved of all costs herein, and, in the event it be held that Mrs. O. W. Longino has any proprietary interest in the property of this company, for judgment fixing her interest at an undivided three-twentieths in the items shown on the list, after deduction of the items above shown, and subject to payment of all liabilities, and that she have judgment against Robt. D. Webb for three-twentieths of $70,000, the amount of royalties shown on the books of the company, under proper resolutions, due to said Webb.”
On the trial of the ease some testimony was given by F. W. Todd, an «expert aceountant, who, at plaintiff’s instance, prepared the “list,” attached to her petition, in support of the theory upon which that list was prepared; and N. R. Grigsby, secretary and bookkeeper -of the defendant company, testified in support of the correctness of the list attached to the answer. Mr. R. H. Miller, cashier of the Bank of Minden, and an expert accountant, also testified concerning certain bookkeeping entries, to which we will refer hereafter; and Mr. R. D. Webb gave some testimony, to which we may also refer. There was judgment in the district court, rejecting plaintiff’s demands for specific performance, dismissing, as in case of nonsuit, all demands asking for a moneyed judgment, and reserving, to plaintiffs—
“all their rights, if any they have, to sue for damages, and further reserving all their rights to sue for partition of property and assets, conceded to them in Webb Press Company, Limited, with an accounting for same; plaintiff to pay all costs.”
From the judgment so rendered plaintiffs have appealed, and defendants have answered, praying that the judgment be amended by restricting it to the dismissal of the suit.
Opinion — On the Exceptions.
[1] 1. The exception of want of authorization was properly disposed of by the ruling relieving defendants of the necessity of answering until plaintiff’s husband should have authorized her. After his authorization, it had no foundation in the fact. O. P. 320, 321; Succession of Pomroy, 21 La. Ann. 576: Cartwright v. Puissigur, 125 La. 700, 51 South. 692.
[2] 2. The exception that the contract sued on is indivisible, and that plaintiffs cannot select certain stipulations and sue for their enforcement, but that the court must have the entire contract and all the parties thereto before it, was properly overruled. The entire contract and all the parties thereto are before the court, and plain *36 tiffs are seeking to enforce the contract in accordance with its terms.
[3] 3. The exceptions of no cause of action. — -with the specifications that plaintiffs fail to allege that the damage, which may result from the alleged breach of the contract sued on, cannot be compensated in money, and fail to allege that it is within the power of defendants to discharge the obligations sought to be enforced; that they seek to have the court constrain action on the part of defendants which would “infringe upon their personal liberty” ; that the contract in question is a continuing one, specific performance of which cannot be enforced at this time; that plaintiffs fail to state the specific manner in which said contract may be enforced; and that they are not entitled to specific enforcement, because they have failed and refused to comply with their obligations thereunder — were properly sustained only in so far as they were directed to the matter of the furnishing, by the defendants of “satisfactory security,” upon which matter the contract is not sufficiently definite to warrant a judgment for specific performance.
It has heretofore been said by this court:
“In determining * * * what are proper causes for specific relief, the equity jurisprudence of England and this country may be instructively consulted.” Levine et al. v. Michel, 35 La. Ann. 1127.
And we find that, in courts whose decisions constitute that jurisprudence “an engagement for security of satisfactory character” is held to be “too uncertain and indefinite for specific performance.” A. & E. Enc. of Law (2d Ed.) vol. 26, p. 34; Mirandona v. Burg, 49 La. Ann. 656, 21 South. 723.
In other respects, the exception should have been overruled; for it is alleged that defendants are able to comply with the demands of the petition and that plaintiffs have fulfilled their obligations under the contract, beyond which, it being alleged, and taken as true for the purposes of the exception, that defendants are in possession of, and administering, plaintiff’s property, she (plaintiff) has the right to demand that they render an account of their gestión, which right is not impaired by reason of defendants having recognized, and obligated themselves to accord, it in the contract which plaintiffs seek to enforce.
4. The exception, that plaintiffs have cumulated demands for specific performance with a demand for a moneyed judgment, should have been overruled for the same reason, and the further reason that, under our system of practice, a plaintiff may cumulate any number of demands in one action, so long as they do not conflict with each other.
On the Merits.
1. Dr. Webb, by virtue of his previous acquisition, his inheritance from S. J. Webb, and the contract with plaintiffs, owns (or controls) all of the stock of the Webb Press Go., Limited, and is in absolute control of the company, which in turn is in possession of the corporate assets. Under the contract referred to, with the consent of Dr. Webb and for a valuable consideration, there was conveyed to plaintiff an undivided three-twentieths interest in all the assets of the company, existing as such on February I, 1911, subject to deduction for corporate debts due upon that date, save such as may have been due to the succession of S. J. Webb and the formerly existing firm of S. J. Webb & Bro., the relations of which entities with the company were to be ignored, “for the purpose of said contract,” and subject to deduction of plaintiff’s proportion of such law charges as might, necessarily, be incurred in collecting such assets; plaintiff’s interest in the “agreed value” of the “tools, tackle, and like perishable property in use by the company” to be paid to her in cash.
The company, not only entered into the *38 contract, by notarial act, but is now before tbe court, in this case, by formal answer, admitting and affirming said contract and alleging:
“That it has complied with its obligations under said agreement of compromise and transaction and that it stands ready to comply with any obligations that it may be held were imposed upon it by said agreement.”
And there is no suggestion, in the record, that the contract so entered into and so judicially affirmed is ultra vires, either of the company or of its representative, by whom it was signed. The only function which the court has to discharge, therefore, is to interpret the contract, and, so far as practicable, enforce it as interpreted. It contains, as we have seen, the following (among other) stipulations, to wit:
“Mrs. Longino * * * has, and does, by these presents, transfer and deliver to Dr. Robt. D. Webb all her shares of stock in the Webb Press Company, Limited, and all her rights and interest in the assets of that company, except a fixed and agreed three-twentieths interest, reserved by her and conceded to her, in all the assets and property of the company and legally due the company at the date February 1, 1911, including three-tioentieths interest in all royalty claims allowed or paid to Dr. R. D. Webb and all the assets and property on hand, of every hind or due the company, at that date, and accrued interest on said assets; * * * it being understood that she was [is] to be paid- her three-twentieths of the assets existing prior to February 1, 1911, and such subsequent charges only as may be necessary to enforce, by law, the collection of assets of the company in which her three-twentieths has been herein reserved. This makes her three-twentieths interest a net interest, subject to the payment only of such debts as are above stated; her three-twentieths interest bearing its proportional share of said debts, with exceptions mentioned. * * * Dr. R. L. Webb and the Webb Press Company, Limited, agree * * * to pay over to Mrs. O. W. Longino, or to her order, or to her accredited agents, the three-tioentieths interest of the assets due her, as collected, and to give satisfactory security for the performance of the obligations herein incurred, and especially consent that Mrs. Longino shall have the option and right to take in settlement any assets of the company, where same are to be discounted in settlement, at the price fixed on same for such discount settlement with the debtors of the company.”
Plaintiff’s conveyance of her stock in the company was, therefore, a conveyance in prtesenti, and was absolute, and it is not denied that she has executed such conveyances of her interest in patents, inventions, and lands as she was called on to execute under the terms of the contract. In parting with the stock, she parted with her interest in what appears to be an exceedingly profitable business, and from February 1, 1911, has derived no benefit therefrom. If, under the circumstances thus stated, she did not acquire an interest in the assets of the company, we should be at a loss to know what she did acquire. But, as the matter stands, we find no difficulty in holding that, agreeably to the plain terms of the contract, she became a co-owner with the defendant company (to the extent of three-twentieths) of all the assets owned by it on February 1, 1911; that she was entitled to be paid, at that time, three-twentieths of all the cash which formed part of those assets, subject to deduction, in the same proportion, for the payment of the debts then due; that she was and is entitled to be paid three-twentieths of the amounts realized from the collection of other assets, or their reduction to money, as or when collected or so reduced, subject to a like deduction and a like proportion of the expense of collection; that as to the “tools, tackle, and like perishable property, in use by the company,” she was and is entitled -to recover three-twentieths of “the agreed value,” whether the same are reduced to cash or not. The contract, indeed, strongly suggests the idea that there was conveyed to plaintiff three-twentieths interest in the assets of the company, without any deduction whatever, save for her proportion of the expense of “collecting” the same, and, though defendants’ learned counsel say, repeatedly, in the able brief filed by them, that the contract stipulates for the payment of the debts of the company, the stipulation is not altogether apparent. Plaintiff, however, concedes that the debts due on February 1, 1911, are *40 to be deducted in making tbe settlement for her three-twentieths of the assets, and that question need not be further considered.
On the other hand, to interpret the contract to mean that the interest in defendants’ assets which plaintiff acquired is to be delivered to her only when it may suit the pleasure or convenience of the company to pay the debts in question would be unauthorized by anything that we find in the contract, and would be unreasonable, in view of the fact that the company is amply able now to settle with her, and also pay its debts, and would still have a very large balance to its credit. It is conceded that plaintiff is entitled to share, to the extent of three-twentieths, in whatever interest may be collected on the notes or other interest-bearing obligations of which, under the contract, she is part owner, and that her rights in that respect are not restricted to the interest which may have accrued up to February 1, 1911; nor could it well be otherwise, since the right thus conceded is included in her title as owner.
2. We next inquire: Of what did the assets and liabilities of the company consist on February 1, 1911? On the list annexed to plaintiffs’ petition there appear interest-bearing promissory notes, received by the company in payment for presses, and held by it on the date mentioned, maturing from time to time up to 1920, to the aggregate amount of $530,055.63. On the list attached to defendants’ answer, the aggregate amount of such notes is stated to be $504,236.95. The items on the two lists are identical, save that on plaintiffs’ list there appear:
Taylor note cligd. off to P. & L.....$21,818 68
Barge note chgd. off to P. & L..... 4,000 00
And the same items appear on defendants’ list, except that the amounts are not included in the total; the secretary of the company testifying that they were considered uncollectible. The discrepancy between the totals is thus accounted for, but there is a difference in the item “Charles Titche, Ray-ville, La.” (appearing on both lists), and we infer that there is an error in addition upon one list or the other, as the item calls for $16,200 on plaintiffs’ list and $16,000 on defendants’ list.
The assets, other 'than notes, appearing on both lists, as also those appearing on one list and not upon the other, are as follows :
Both Lists.
Aliceville Compress Co........... $ 10 09
Cash in Bank of Minden........ 24,891 89
Cash in Bank of Webster........ 12,686 07
Childress Compress Co........... 169 40
Central Tex. Compress Co........ 105 00
Hico Compress Co............... 296 00
Sagerton Compress Co........... 200 00
Segmn Compress Co............. 340 00
Seymour Compress Co............ 478 70
One-half Longino Bldg........... 4,254 38
Machinery a/c.................. 16,782 52
Office fixtures.................. 806 01
Tools, tackle, etc................ 1,500 00
Real estate, Corinth and Beaumont 13,387 99
S. J. Webb & Bro............... 30,368 57
E. N. Philipps.................. 16,000 00
Refund, Amory, Bliss............ 25 00
Five bale hoists................. 250 00
Plaintiffs’ List.
Atlantic States W. H. C. Co...... $ 169 40
Geo. H. BIcFadden.............. 190 00
J. H. Wilson................... 23 81
Torreón bale hoist............... 175 00
Refunded Sagerton Compress Co.. 222 45
Refunded back salaries.......... 525 00
Int. to February 1, 1911, on Dr. Webb’s overdrafts............. 5,375 85
Royalties to offset credit to Dr. Webb ....................... 254,000 00
Dividend to offset credits to R. D. & S. J. Webb................. 100,000 00
Defendants’ List.
Torreón, refund, etc.............$ 525 00
Charlotte, N. C................. 7 81
Blerchants’ & Farmers’ Cotton Co. ($4,000 chgd. to profit and loss) estimated .................... 500 00
Old parts of presses............. 500 00
John T. Lasley................. 200 00
Timpson Compress lot........... 200 00 J. W. Taylor notes $17,000, in suit chg. to profit and loss.
Freight claims ................. 100 00
Longino Bldg., a/c Dr. & Blrs. Longino, estimated............. 2,000 00
*42 The liabilities appearing on both lists, as also those appearing on the one list and not the other, are as follows:
Both Lists.
Mrs. C. W. Longino (dividend)... $ 4,500 00
Reading Iron Co. (as subject to deon 512 34
Prank S. Mills.................. 80 00
* * * Co........ 129 60.
Y. Jr.................. 80 00
Plaintiffs’ Lists.
S. J. Webb (with note that it should be struck out or ehgd. back) ........................ $ 52,370 41
R. D. Webb (with similar note as to part) ..................... 107,055 67
R. D. Webb, salary for 1910..... 9,000 00
Miss Eldrige.................... 377 81
Defendants’ List.
Reading Iron Co., sundry bills payable ...................... $ 21,125 00
Birmingham M. & P. Co., bills 00
stock................... 50,000 Ofl
Miss Eldrige................... 452 81 41
Robt. D. Webb, unpaid ............ 00
R. D. W.. 00
J. 00
bal. due on 00
J. H. Wilson, bal. due to Peb. 1, 1911 ........................ 126 19
Taxes, Rayville Compress plant, 231 20
boiler claim.... 106 77
W. U. Tel. for 1911 8 75
7 75
Mineóla, Tex., press repair claim 144 09
Timpson, Tex., Compress plant, 1910 .................. 236 95
U. S. Gov. taxes................ 268 95
Freight on installing bale hoist, ..................... 25 00
N. R. Grigsby, bal. salary....... 96 59
R. D. Atty., Shreveport. .. 1,000 00
Roberts & Roberts, Attys......... 750 00
Poster, Freeman, Watson & Coit, 50 00
& 500 00
Duffie & Duffie, Attys............ 100 00
S. J.
Mineóla and Temple, Tex., and Dublin, Ga., claims.
U. S. government. Rev. Dpt.
taxes.
Reference to Dec. Sup. Ct. allowing Go. % profits, and % as royalties, to owners of patents.
As will be seen, from a comparison of the foregoing figures, the main dispute is about a few large items, and we shall now devote our attention to them:
[4] 3. Defendants propose to reduce the assets, in which plaintiff is interested, by charging the $50,000 representing the capital stock of the company as a liability and deducting it from said assets.
There is no doubt that, as a matter of bookkeeping, the amount due. to the capital account ordinarily figures among the liabilities of a corporation; but that rule, or custom, finds no application in a case such as this, where, the capital of the corporation having been merged in other specific assets, an interest in those assets is transferred to a
stockholder in consideration of his transferring his shares in the corporation to another person, of his compromising and dismissing certain pending suits against the corporation, and of his consenting that, from the value of the assets that he is to receive, there shall be deducted a proportionate amount for the payment of the existing debts of the corporation. As well might it be said that, where one buys the assets of a corporation and agrees to pay its debts as the price,' or part of the price, he thereby binds himself, also, to refund to the stockholders the amount invested by them in the enterprise.
The item of $50,000 should, therefore, be stricken off the list.
4. Defendants propose, also, to deduct from the assets the following amounts, entered as liabilities of the company and credited: $52,370.41, to account of S. J. Webb; $70,000, $25,000, and $17,000, to R. D. Webb; $80, to P. S. Mills; and $80, to J. Y. Webb, Jr.
The items mentioned trace their origin to an' entry in the minutes of defendants’ board of directors, of date January 21, 1908, reading:
“On January 21, 1908, the directors met at the office of the company, in Minden, La., and declared a $100,000 dividend, to be paid at such time, or times, as will not materially inconvenience the business operations of the company.”
*44 The next minute entry that we find which refers to the dividend so announced is that of February 4, 1911, which reads:
“Motion was passed approving the action of the president, Robt. D. Webb, in paying the cash dividends as per resolution of January 21, 1908.”
From the testimony of defendant’s bookkeeper, it appears that, immediately after the adoption of the resolution of January 21, 1908, he placed $75,000 to the credit of the account of S. J. Webb and $25,000 to the credit of the account of R. D. Webb. That neither the resolution nor the credits were intended otherwise than in a Pickwickian sense is suggested by the fact that nothing more was done about either until, say February 1, 1911 (the exact date of the first movement being a little uncertain), when R. D. Webb, who had then become the president of the company (vice S. J. Webb, deceased), ordered that $30,000 be distributed, under the resolution of January 21, 1908, which action was brought to the attention of, and approved by, the board of directors on February 4, 1911, the day after the plaintiff, Mrs. Longino, had instituted her suit, No. 2,286, in which she demanded $15,000, as her pro rata of the dividend of $100,000, and denied the right of R. D. Webb to order such distribution.
The secretary testifies that only $100 was actually paid on February 1st, but that checks for the whole $30,000 were issued on that day, though his testimony as to the details does not appear, altogether, to correspond with his general statement. Thus, he is interrogated and answers as follows:
“Q. Take the list you have filed here, and made up yourself from the books of the company; we find that you claim Dr. Webb to have $17,700, Mrs. Longino $4,500, Mr. Mills $80, and J. Y. Webb, Jr., $80; and you have just stated that you were to have $60. That would not make $30,000. Now, what other amounts go in to make the $30,000, and to whom? A. Of the $30,000 distributed, which is 30 per cent, of the $100,000, R. D. Webb received $7,500 of the $25,000 that has been credited to him in 1908; he received $17,700 out of the $75,000 that had been placed to the credit of S. J. Webb; Mrs. Longino received $4,500 out of the $75,000 that had been placed to the credit of S. J. Webb; J. Y. Webb, Jr., received $120 of that which had been placed to the credit of S. J. Webb, and N. R. Grigsby received $60 of that which had been placed to the credit of S. J. Webb. As before stated, only $100 in cash had been paid out [February 1, 1911]; but checks were issued for the whole $30,000.”
The amounts thus stated aggregate $29,000, and as a matter of fact Mrs. Longino refused to receive the $4,500 which was tendered to her, on the ground that Dr. Webb was without authority to order the distribution. We take it, however, that the balance of the' $30,000, or say $25,500, was paid, and it was so paid out of money that formed part of the assets of the company in the early morning of February 1, 1911, at which time plaintiff's rights, under the contract (subsequently made and here sued on) attached. We say “formed part of the assets of the company,” because the action of the company’s board of directors, on January 21, 1908, was not a declaration of a dividend. It amounted to nothing more than an announcement that if, in the future, it could be done without inconvenience, the company would declare a dividend, which action vested no right in the stockholders to demand the payment of a dividend, no right in S. J. or R. D. Webb, as stockholders, to have the $100,000 (referred to as a dividend that might be declared, when convenient) placed to the credit of their accounts, and no right in R. D. Webb, as the president of the company, three years later, to order the distribution of $30,000; and as no distribution was made, or attempted, until after the time at which, under the contract here sued on, plaintiffs’ rights, with respect to the assets on hand on February 1,1911, attached, it follows that none could thereafter be made, to the prejudice of those rights. Hence, for the purposes of this case, the $25,500 actually distributed must be still regarded as among the assets on hand February 1, 1911, and the following items, charged on defendants’ list *46 as liabilities for dividend, to be deducted from said assets, to wit: S. J. Webb, $52,-370.41; R. D. Webb, $25,000 and $17,700; Mrs. C. W. Longino, $4,500; Frank S. Mills, $80; J. Y. Webb, Jr., $80, — making a total of $99,730.41, must be stricken therefrom. Another, and equally conclusive, reason for striking off the $52,370.41, credited to the account of .S. J. Webb, is found in the following stipulation of the contract, to wit:
“Mrs. Longino * * * does, by this act, sell and transfer to him [Dr. Webb] all her rights, title, and interest in all the assets of the estate and succession of S. J. Webb, deceased, hereby agreed and fixed at $20,000, for the purpose of this settlement, which sum is to be held and considered forming and comprising all the property of said succession, not included in the assets of S. J. Webb ■& Bro. and the Webb Press Company, Limited, and with the understanding and agreement that no claim shall be made against either that partnership or that company or Mrs. C. W. Longino by said succession. The price and consideration of this transfer is the compromise stated and to avoid litigation and the further consideration of the payment to Mrs. Longino of one-fifth interest of the assets in said amount fixed. This transfer includes all of Mrs. Longino’s rights and interests in and to the patents and inventions of the deceased, S. J. Webb, and she agrees to make formal deed of said interest to [in] any and all of the patents and inventions, as may be requested, and also deeds, when requested, to sell lands and real estate she has transferred to Dr. R. D. Webb by this act.”
It thus appears that, .in valuing the succession of S. J. Webb, for the purposes of this compromise, at $20,000, the interest of that succession, in the partnership of S. J. Webb & Bro. and in the Webb Press Company, Limited, was expressly excluded, and, moreover, that it was expressly stipulated, as part of the compromise:
“That no claim shall be made against either that partnership or that company or Mrs. C. W. Longino.”
If, however, the $52,370.41, here in question, is to be regarded, for the purposes of the settlement between Mrs. Longino and the company, as a debt due by the company to the succession of S. J. Webb, to be deducted from the assets of the company, in which, under the compromise, Mrs. Longino is to receive a three-twentieths interest, she becomes the victim of what, in the vernacular, might, perhaps, be called “the treble cross,” since she does not get her one-fifth interest in that amount in the succession, does not get her three-twentieths interest in her settlement with the company, and, by reason of such deduction, loses a like interest in a like amount which she would otherwise receive from the assets of the company.
5. For the reason last above given, the item “S. J. Webb, Longino Building %, $1,000,” which appears among the liabilities on defendants’ list, should also be stricken off.
6. And for a like reason, based upon a like or similar stipulation of the compromise, relating to the transfer by plaintiff of her interest in the firm of S. J. Webb & Bro., the item “S. J. Webb & Bro., $30,368.57,” appearing on both lists as an asset, must be stricken off; the stipulation reading, in part, as follows:
“ * * * The parties to this act * * * have [agreed], and do by these presents agree that the assets of. the firm of S. J. Webb & Bro. shall be fixed at $30,000, for the purpose of this settlement, and that Dr. R. D. Webb shall have full title and interest in and to said assets, as comprising the entire partnership of S. J. Webb & Bro., on payment to Mrs. O. W. Longino of three-twentieths of said amount, with the especial agreement that this settles all claims, of whatever nature, between the firm of S. J. Webb & Bro. and the Webb Press Company, Limited, in so far as it may affect Mrs. Longino’s three-twentieths interest in the assets of the Webb Press Company, Limited.”
7. Plaintiffs’ list shows, among the assets; an item entitled “Royalties to offset credits to Dr. Webb, $254,000,” and defendants’ list shows, among the liabilities, an item entitled “Unpaid royalties” (to Dr. Webb), “$70,000.” It appears, from the evidence and admissions, that Dr. Webb had been paid $184,000 in royalties, and credited with $70,000 more, which payments and credit were attacked by plaintiff in the litigation that was compro *48 raised. Under the compromise, as we have seen, plaintiff acquired—
“three-twentieths interest * * * in all the assets and property of the company, at the date February 1, 1911, including three-twentieths interest in all royalty claims allowed or paid to Dr. Webb, * * * and accrued interest on said assets.”
Dr. Webb, on August 15, 1911, paid plaintiff $27,600 as her three-twentieths of the $184,000 which had been paid him for royalties (which amount she accepted without prejudice to her rights under the compromise) ; and, in order that she should now get her three-twentieths of the $70,000 which has been allowed and credited to Dr. Webb, but not paid (or paid only in part), it is only necessary to strike the item of $70,000 from the liability column of defendants’ list, thereby leaving that amount among the assets of which plaintiff is to get the stated proportion.
Plaintiff’s counsel insists that she should be allowed interest on the different amounts paid to Dr. Webb (and going to make up the $184,000) from the dates of such payments; but we do not find that such interest is called for by, or is within the contemplation of the contract, upon which alone plaintiff relies, and whereby, according to our interpretation, she is entitled to share in the accrued and accruing interest earned by all interest-bearing assets held by the company on February 1, 1911, until the maturity of such obligations, but, as to the noninterest-bearing assets, is entitled to interest upon her share thereof only from the time when, according to the terms of the contract, such share became exigible.
Defendants’ counsel contend that judgment should be rendered against Dr. Webb, alone, with respect to the three-twentieths of the $70,000 credited to his account for royalties; but it does not so appear to us. Dr. Webb and the company are each bound by the contract for the obligations thereby assumed in favor of plaintiff, and as to the particular item in question, since all the assets from which all the obligations (including that relating to the $70,000) are to be paid, are ih the possession of the company, and Dr. Webb, as well as the company, will be bound by the judgment to be herein rendered, the company will be fully protected in paying to plaintiff, under such judgment, any amount which it would otherwise pay to Dr. Webb.
8. Taking, as the basis for such conclusion as can be here reached, the list of assets and liabilities filed by the defendant company, and amending the same in accordance with the views heretofore expressed, we reach the following result:
Total assets, as per original list...........$619,183 83
Amount to be added......................... 25,000 00
$644,683 83
Amount to be deducted...................... 30,368 57
Total assets, as per amended list.........$614,315 26
Total liabilities, as per original list...................... $259,591 40
Items to be deducted:
Capital stock .......$ 50,000 00
Mrs. C. W. Longino .4,500 00
R. D. Webb, unpaid royalty ... $70,000 00
dividend R. D. W. .. 25,000 00
dividend S. J. W. .. 17,700 00 — 112,700 00
Frank S. Mills....... 80 00
J. Y. Webb, Jr...... 80 00
S. J. Webb.......... 52,370 41
S. J. Webb.......... 1,000 00 — 220,720 41 38,860 99 Balance of assets, of which plaintiff is entitled to three-twentieths, or 15 per cent...............................$575,454 27
15 per cent, of $575,454 27 is................. $ 86,318 13
It may be that some of the items included in the foregoing calculations will not realize, or require, the amounts called for by defendants’ list; some of the notes appearing at face value may not be paid; some assets, charged to profit and loss, may pay face values ; some assets, other than notes, the values of which are estimated, may realize more, or less, than the estimated amounts; the values of some assets', which are to be arrived at by *50 agreement, may be changed by agreement; and those contingencies will be provided for by proper reservations in the decree.
9. Defendants’ list shows $37,578.46 cdsh on hand February 1, 1911; $16,782.52, assets under the title “Machinery Account”; and $806.01, under the title “Office Furniture.” The admission is of record that plaintiff is entitled to her interest in $8,800, included in the item of $16,782.52, though, as to the balance of that item, and other items, it is said that the figures given on the list were not intended as fixing the values, but were merely furnished as they appear upon the books, which we have no doubt is true. The figures as they appear upon the books are, however, fairly reliable guides in most instances.
On the trial in the district court there was filed in evidence a statement, furnished by the defendant company, showing that, of the assets (other than cash) on hand on February 1, 1911, it had collected and realized, between that date and the date of the trial (say September 26, 1911), $75,721.70, and had paid out, within the same period, $5S,S84.24 (the difference between the receipts and disbursements being $16,837.46). Most of the payments, no doubt, represent debts incurred prior to February 1, 1911; others, manifestly, represent debts subsequently contracted; and still other payments, to the amount of $25,200, we infer, represent payments made to R. D. Webb on account of royalties. Being without accurate information upon the subject when the petition was filed, plaintiff therein alleges that the amount collected, up to that time, was $6S,000, and we shall adopt those figures, in part, in framing the decree — our view of the matter being that, the contract sued on having been made on June 17th, defendant was then in position to know, with approximate certainty, what assets it owned, and what debts it owed, on February 1st preceding; that plaintiff, having, under said contract, acquired three-twentieths interest in such assets, subject to the liability of said interest for a like proportion of the debts, was entitled, at once, to be paid her proportion of the cash on hand and of the $8,800 admitted to be due from the item “Machinery Account,” as also her proportion of other assets, “as collected,” subject to the reduction on account of debts, as stated; that, as defendant was in possession of all the assets and had exclusive charge of all the collections and disbursements, it was incumbent on it to make prompt and accurate reports of its gestión, and that plaintiff ought not to be made to suffer by reason of its failure so to do; that, it appearing that, as to certain of the assets and collections, her proportion was exigible when this suit was instituted, in September, 1911, it is no fault of hers1 that defendant then failed, and failed on the trial of the case, to furnish a correct and intelligible statement of the amount to be deducted therefrom on account of the debts; and that, whilst said interest is still, and will remain, liable for its proportion thereof, until the debts shall have been paid, nevertheless, as the greater proportion of it, and of the assets, themselves, remains in the possession of the defendants, the deduction to be made from • the amount now due her may very well be adjusted in future settlements.
[5] And we are of the same opinion with regard to the amounts ($5,686 and $4,091) admitted, in the contract sued on, to be due by Mrs. Longino and her husband, respectively; it not having been within the contemplation of the contract that those amounts should be paid as a condition precedent to the payment of any part of the much larger sum, due, if not exigible, from defendant. With the proper reservations, we shall therefore give a moneyed judgment in favor of plaintiff for three-twentieths, or 15 per cent, of the following amounts, viz:
*52 Cash on hand February 1, 1911.. .$ 37,578 46
Amount claimed in petition as since collected ..................... 68,000 00
Amount (admitted) to credit of Machinery Account............... 8,800 00
$114,378 46
—of which 15 per cent, is $17,156.76.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be affirmed, in so far as it rejects plaintiff’s demand for specific performance of the contract sued on, in the matter of defendants' obligation to furnish “satisfactory security,” and in so far as it reserves plaintiff’s rights. It is further ordered and adjudged that in all other respects said judgment be annulled, avoided, and reversed, and that there now be judgment in favor of plaintiff, Mrs. C. W. Longino, and against the defendant, the Webb Press Company, Limited, decreeing that said company is bound, by the contract sued on, to furnish plaintiff with a correct list of its assets and liabilities, as of date February 1, 1911, and is bound to furnish her, from time to time, and promptly, with statements showing the collections of such assets, the law charges necessarily incurred in making the same, and the amounts due her therefrom, after deduction of her proportion of the debts due prior to February 1, 1911, and of such charges.
It is1 further adjudged and decreed that the list of debts and liabilities filed by said defendant, as in compliance with its said obligation, be held to be incorrect, and that it be amended in the following particulars, to wit: By adding to the assets there listed the sum of $25,500, and striking therefrom the sum of $30,368.57, and by striking from the liabilities there listed the items: “Capital stock, $50,000; Mrs. C. W. Longino, $4,500; R. D. Webb, unpaid royalty, $70,-000; dividend R. D. W., $25,000; dividend S. ,T. W., $17,700; Frank S. Mills, $80; J. Y. Webb, Jr., $80; S. J. Webb, $52,371.41 and $1,000” — thereby, for the purposes of this case, fixing the total value of the assets of the defendant company, as of date February 1, 1911, at $614,315.26; the total liabilities, as of said date, at $38,860.99; the balance of assets, of which plaintiff is entitled to three-twentieths, or 15 per cent, at $575,454.27; and said three-twentieths, or 15 per cent, at $86,318.13.
It is further adjudged and decreed that there be judgment in favor of the plaintiff and against both defendants, each for the whole amount, in the sum of $17,156.46, with legal interest thereon from judicial demand until paid; that as to the values and amounts of the various assets and liabilities appearing on said list, filed by defendant, and of the assets collected and liabilities paid by defendant since February 1, 1911, and which may hereafter be collected and paid, as to the enforcement of the obligations of plaintiffs, respectively, for the debts acknowledged by them in the contract sued on as to defendants’ obligation to render further account and settlement with respect to the assets in which plaintiff is here recognized as the owner of an undivided interest, and as to any claims arising, between the two defendants, out of this suit and judgment, the rights of the litigants be reserved. It is further decreed that defendants pay all costs.